**Abdi A. SHEIK–ABDI, Plaintiff–Appellant,**

**v.**

**Martin E. McCLELLAN, et al., Defendants–Appellees.**

No. 93–3356.

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1994.

Decided Oct. 14, 1994.

John H. Bisbee (argued), Macomb, IL, for plaintiff-appellant.

Charles E. Hervas, James G. Sotos, Michael W. Condon, Michael D. Bersani (argued), Itasca, IL, for Martin M. McLellan, Steven Brewer, Joe Wazny.

Karen L. Kendall, Bradford B. Ingram, David A. Perkins (argued), Bradley Scott McMillan, Heyl, Royster, Voelker & Allen, Peoria, IL, for William Akers.

Before ESCHBACH, FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Abdi Sheik–Abdi filed suit under 42 U.S.C. § 1983 against three Macomb, Illinois, police officers and a McDonough District Hospital paramedic alleging that they unlawfully arrested and confined him in violation of his Fourth and Fourteenth Amendment rights. The district court denied Sheik–Abdi's cross-motion for summary judgment and granted summary judgment for all of the defendants. We affirm.

I.

On April 2, 1990, Abdi Sheik–Abdi, an assistant professor at Western Illinois University, arrived home from work shortly after 4:00 p.m. after putting the finishing touches on a manuscript on which he had been working for 17 years. In celebration of his achievement, Sheik–Abdi began imbibing cognac. Within half an hour, Sheik–Abdi had lapsed into a somnolent state on the couch in the den where he was discovered by his wife, Zeinab, who noticed that his eyes were closed and he did not appear to be breathing. After unsuccessfully attempting to rouse her husband, Zeinab telephoned McDonough District Hospital. She advised the switchboard that her husband had become unconscious after a bout of drinking and requested that an ambulance be dispatched to their residence.

Paramedics William Hagler and William Akers responded to the call and arrived at the Sheik–Abdi's home within minutes. Zeinab Sheik–Abdi answered the door, admitted the paramedics to the house, and

directed them to the den where they encountered Abdi Sheik–Abdi, lying on the floor glassy-eyed. Hagler and Akers identified themselves and attempted to take Sheik–Abdi's vital signs, but were unable to do so as Sheik–Abdi stood up, waved his arms, and ordered the paramedics out of his house.

Akers and Hagler then retreated to the kitchen where they discussed the situation. Perceiving Sheik–Abdi to be "belligerent and uncooperative," and fearing the development of an "unpredictable situation," the paramedics decided to call the police department for assistance.[1] Hagler telephoned the police from the ambulance, and Officers Martin McClellan and Joseph Wazny soon arrived in separate squad cars to assist the paramedics with what they perceived to be a "domestic situation." Hagler allowed the officers into the house and advised them that a man inside had been drinking and was possibly combative. When the police ventured into the kitchen area, Sheik–Abdi was on his feet, with his wife holding one of his arms and Akers holding the other. Upon seeing the police officers, Sheik–Abdi became verbally abusive. At that time Akers informed the police that he had observed Sheik–Abdi strike Zeinab in the chest while Hagler was in the ambulance contacting the police. According to Akers, this striking occurred when Zeinab had taken hold of Sheik–Abdi's arm and he shoved her with a forearm in attempting to get free.

Upon hearing Akers' report, the officers declined to further question either Akers or Zeinab Sheik–Abdi with respect to the alleged striking. Instead, after several attempts to persuade Sheik–Abdi to go to the hospital, McClellan offered him the choice of going to the hospital or to jail. Sheik–Abdi continued his verbal abuse, and, according to McClellan, cocked his arm when his wife attempted to cover him with a robe. At this point, McClellan placed Sheik–Abdi in handcuffs. Wazny then escorted Sheik–Abdi to McClellan's squad car as Zeinab denied that her husband had struck her and pleaded with McClellan not to take him to jail.

Sheik–Abdi did not go directly to jail; rather, McClellan drove him to the hospital. Upon arrival, the paramedics noted that Sheik–Abdi was "alert and conscious." McClellan put Sheik–Abdi in a wheelchair and transported him to a holding area known as the "trauma bay." After removing the handcuffs, McClellan attempted to place Sheik–Abdi on a cot, but Sheik–Abdi resisted, striking the officer's arm with a backhanded swipe. At that point, McClellan recuffed Sheik–Abdi, took him back to the squad car, and carted him off to jail before any medical treatment could be rendered. An information attested to by Officer Sterlon Brewer charged Sheik–Abdi with having "intentionally caused bodily harm to Martin McClellan in that he struck McClellan in the arm with his fist, and did then and there commit the offense of battery in violation of [Illinois law]." Sheik–Abdi was released about twenty-four hours later and the charges against him were dropped weeks later at McClellan's request.

Abdi Sheik–Abdi brought suit under 42 U.S.C. § 1983, alleging that Officers McClellan, Wazny, and Brewer and Paramedic Akers violated his constitutional rights under the Fourth and Fourteenth Amendments. Specifically, Sheik–Abdi charged that the defendants unlawfully seized him from his home without a warrant or probable cause to believe that he had committed a crime and illegally subjected him to summary punishment without due process. The defendants moved for summary judgment, arguing first that Sheik–Abdi had failed to state a claim of constitutional violation, and, alternatively, that they were entitled to qualified immunity. Officer Brewer also asserted that he could not be held liable under § 1983 because he had not personally participated in the arrest. Sheik–Abdi filed a cross motion for summary judgment on the liability issues.

The district court granted summary judgment for all of the defendants and denied Sheik–Abdi's cross motion. The district

---

1. McDonough District Hospital had adopted a policy with regard to the interaction between ambulance and law enforcement personnel. That policy provided in relevant part: "If an emotionally disturbed patient is encountered, ambulance personnel should not jeopardize their own safety. Utilize police personnel in these situations to assist with patient control."

court found that exigent circumstances justified the officers' entry into the home and probable cause supported their decision to arrest Sheik–Abdi for battery on the basis of the paramedic's statement that Sheik–Abdi had struck his wife. Even if probable cause had not existed, the court noted that the officers would be entitled to qualified immunity. The court also found that Sheik–Abdi had failed to state a claim against Brewer, who had no connection to the arrest, or against Akers, who acted reasonably in calling for police assistance and who had no authority to intervene in the officers' decision to arrest Sheik–Abdi. Finally, the court concluded that Sheik–Abdi had failed to state a claim against any defendant for summary punishment.[2]

## II.

We review the grant of summary judgment *de novo*, drawing all reasonable ·inferences from the record in the light most favorable to the non-moving party. *Jean v. Dugan*, 20 F.3d 255, 259 (7th Cir.1994). To affirm, we must find that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## A.

We turn first to Sheik–Abdi's claim that Officers McClellan and Wazny unlawfully seized him from his home in violation of the Fourth Amendment when they arrested him. The district court apparently treated the officers' warrantless entry and arrest as a single episode and found that both probable cause and exigent circumstances supported the officers' actions. On appeal, Sheik–Abdi disputes the existence of probable cause on several grounds, including the officers' failure to investigate the charge on the scene. Alternatively, Sheik–Abdi contends that even if the paramedic's report was sufficient to create probable cause, the officers' decision to arrest still was improper because a minor offense such as battery does not give rise to

the required exigent circumstances to effectuate a home arrest without a warrant.

### 1.

■ Allegations of unlawful arrests in the home ordinarily call for separate determinations of the propriety of the initial entry into the home and the subsequent arrest. In this case, we note as an initial matter that Sheik–Abdi apparently misapprehends the applicability of exigent circumstances, a concept that is relevant only to whether the officers had authority to *enter* the premises *for the purpose of arrest or seizure, see, e.g. Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 2096–97, 80 L.Ed.2d 732 (1984), not to whether they could arrest someone once lawfully inside for some other reason. The Supreme Court consistently has emphasized "the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic," because the home, more than any other location "provide[s] the setting for those most intimate activities that the Amendment is intended to shelter from government interference or surveillance." *Oliver v. United States*, 466 U.S. 170, 178–79, 104 S.Ct. 1735, 1741–42, 80 L.Ed.2d 214 (1984) (citation omitted). "The principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed ... on agents of the government who seek to enter the home for purposes of search or arrest." *Welsh*, 466 U.S. at 748, 104 S.Ct. at 2097 (citation omitted); *see also Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797–98, 111 L.Ed.2d 148 (1990); *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 1689–90, 109 L.Ed.2d 85 (1990); *Payton v. New York*, 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639 (1980). Accordingly, when police officers seek to conduct law enforcement activities within the confines of someone's home, they ordinarily must obtain a search warrant prior to conducting a search or an arrest warrant prior to making an arrest. Only "exigent circumstances"—few in number and carefully delineated, *see United States v. Diaz*, 814 F.2d 454, 458 (7th Cir.),

---

**2.** Sheik–Abdi does not appeal the grant of summary judgment on his summary punishment claim.

**1244**

*cert. denied,* 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987)—will justify a warrantless entry into a home for the purpose of making an arrest or effecting a search. *Olson,* 495 U.S. at 100, 110 S.Ct. at 1689–90; *United States v. Berkowitz,* 927 F.2d 1376, 1385 (7th Cir.) ("Generally, police may not enter a person's home to arrest that person without an arrest warrant, unless exigent circumstances exist."), *cert. denied,* —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991).[3]

A related, though not identical, line of cases also has recognized that emergency situations sometimes arise and on such occasions a warrantless entry into a home will be appropriate for a purpose other than to arrest a suspect or search for evidence of a crime. *See generally* W. LaFave, 2 Search and Seizure: A Treatise on the Fourth Amendment § 6.6 at 697 (2d ed. 1987). It is clear, for example, that "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona,* 437 U.S. 385, 392–93, 98 S.Ct. 2408, 2413–14, 57 L.Ed.2d 290 (1978); *see also Root v. Gauper,* 438 F.2d 361, 364 (8th Cir. 1971) ("[P]olice officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance."); *Wayne v. United States,* 318 F.2d 205, 212 (D.C.Cir.) (Burger, J.) ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency."), *cert. denied,* 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963). This so-called "emergency doctrine" is an exception to the ordinary requirement of a warrant for entry into a home; thus, the burden falls upon the officer to show the existence of an objectively reasonable belief that his intrusion was made to "render assistance or prevent harm to persons or property within." *United States v. Moss,* 963 F.2d 673, 678 (4th Cir.1992) (citing *Wayne* and *Root*).

Our colleagues on the Fourth Circuit recently explained that the distinction between the aforementioned doctrines appears to be in the perceived function of the responding officer: a warrantless entry is analyzed as an "emergency" if purportedly made "incident to the service and protective functions of the police" and as an "exigent circumstance" if allegedly executed in a "law enforcement" capacity. *Moss,* 963 F.2d at 678. Here the officers' initial entry into the Sheik–Abdi's home obviously falls within the former category. They were called by paramedics to facilitate the treatment of a person who apparently had consumed too much alcohol, and they did not learn of any possibly criminal activity until after they had entered the home, though one of the paramedics warned that the intoxicated man might be combative. In our view, an emergency warrantless entry was reasonable in these circumstances.[4]

As a general matter, we are uncertain whether the circumstances that may give rise to "emergencies" are less circumscribed than those that constitute "exigent circumstances" (the Fourth Circuit thought not), but we

---

**3.** In *Olson,* the Court stated that the Minnesota Supreme Court "applied essentially the correct standard in determining whether exigent circumstances existed" to make an arrest. 495 U.S. at 100, 110 S.Ct. at 1689–90. The Minnesota High Court observed that a warrantless intrusion could be justified by hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, or risk of danger to police or to other persons inside or outside a dwelling. *Id.* Prior to *Olson,* we had stated a more generic test for exigent circumstances: "whether the exceedingly strong privacy interest in one's residence is outweighed by the risk that delay will engender injury, destruction of evidence, or escape." *Diaz,* 814 F.2d at 458; *United States v. Acevedo,* 627 F.2d 68, 70 (7th Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 587, 66 L.Ed.2d 482 (1980).

**4.** The undisputed facts establish that one of the paramedics, Hagler, admitted McClellan and Wazny to the home. Though Zeinab Sheik–Abdi never invited the officers into the house, she also did nothing to indicate that she disapproved of their presence. In such circumstances, it may have been reasonable for the officers to believe that Zeinab had consented to their entry. *See Gerald M. v. Conneely,* 858 F.2d 378, 384–85 (7th Cir.1988) ("[Complainant's] subsequent silence and apparent acquiescence persuades us that [the officer's] presence in the home was not against [the complainant's] apparent wishes.").

need not resolve that question today because Sheik–Abdi does not challenge the lawfulness of the officers' presence in his home. Citing *Mincey*, he concedes that while in the home, the officers presumably could have prevented any breach of the peace that occurred or was likely to occur, Br. at 24–25, and could have taken minimal action to restrain Sheik–Abdi so that he could be treated. Rep.Br. at 14. Sheik–Abdi's objection, and the basis of his constitutional claim, is that the scope of the officer's authority to act within the home was limited by the purpose for which they had been admitted—namely, to assist the paramedics in tending to his health needs. However, neither the emergency nor exigent circumstances doctrine have any bearing on this type of claim.

■ As the foregoing discussion suggests, an unconstitutional entry into the home will vitiate the legitimacy of any search or seizure effected on that occasion because the privacy and solitude of the home are at the core of the Fourth Amendment's protection. *See Soldal v. Cook County, Ill.,* —— U.S. ——, —— n. 10, 113 S.Ct. 538, 546 n. 10, 121 L.Ed.2d 450 (1992) (citing *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990)). Once an officer has lawfully entered the premises, however, the Constitution does not require that he obtain a warrant before affecting an otherwise lawful arrest within. *Cf. Diaz,* 814 F.2d at 459 (stating that even in the absence of exigent circumstances, defendant's consent to undercover officer's entry into his hotel room validated subsequent arrest); *Augustine v. Doe,* 740 F.2d 322, 325 (5th Cir.1984) (stating that consent to entry is assumed to be sufficient to permit warrantless arrest); *United States v. Briley,* 726 F.2d 1301, 1308 (8th Cir.1984) ("valid and voluntary consent may be followed by a warrantless in-home arrest"); *United States v. White,* 660 F.2d 1178, 1182–83 (7th Cir.1981) (stating that consent, even if obtained by deceit, can justify a subsequent warrantless arrest, at least where entry is not obtained solely for the purpose of arresting the suspect); LaFave, *supra* § 6.1(c) at 585 ("no warrant is needed to arrest if there is another lawful basis for the entry."). Professor

LaFave has persuasively explained the rationale behind this rule as follows:

> [T]o assume that the warrant requirement really goes to the matter of arrest rather than the matter of entry (a mistake perhaps induced by *Payton's* approval of an arrest warrant rather than a search warrant as sufficient) is *wrong.* Because (i) there is no general requirement that arrests be made with a warrant, and (ii) an arrest within premises is no "more threatening or humiliating than a street arrest," it should be apparent that *Payton* is grounded (as the Court put it) in "the breach of the entrance to an individual's home." That is, it is the otherwise unauthorized entry and not the arrest which gives rise to the warrant requirement.

LaFave, *supra* § 6.1(c) at 584 (footnotes omitted) (emphasis in original); *see also White,* 660 F.2d at 1183 (noting that the warrant requirement serves no purpose "where the same intrusion would occur whether or not the magistrate issues the warrant."). Once the veil of the home has been legally pierced, we see no need for police officers to turn a blind eye to crime, so long as the arrest is otherwise effected in compliance with the constitutional requirement of probable cause (and any other relevant state law criteria). At the same time, however, emergencies should not be used pretextually in order to blunt the warrant requirement for home arrests. *Cf. Moss,* 963 F.2d at 678 (noting that an emergency "cannot be used as the occasion for a general voyage of discovery unrelated to the purpose of the entry"); *United States v. Presler,* 610 F.2d 1206, 1211 (4th Cir.1979) (stating that entry to aid unconscious occupant did not warrant unrelated search of apartment); *United States v. Brand,* 556 F.2d 1312, 1318–19 (5th Cir.1977) (noting that proper entry to aid drug overdose victim did not warrant unrelated search of adjacent room, but did make valid discovery of contraband in plain view in victim's room), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978).

In this case, there is no suggestion that Officers McClellan and Wazny were searching parts of the house in which they had no reason to be or in some other way were

trying to gin up a charge against Sheik–Abdi. After entering the house, the paramedic on the scene notified the officers that he had observed Sheik–Abdi strike his wife in the chest. On the basis of this information, the officers made an arrest for battery. The next (and final) inquiry into whether this arrest comported with the Constitution requires us to ascertain whether the officers had probable cause.

### 2.

The police have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Maxwell v. City of Indianapolis,* 998 F.2d 431, 433 (7th Cir.1993); *see also Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964); *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). The rule of probable cause has been described as a "practical, nontechnical conception" that accommodates the often competing interests of effective law enforcement and the privacy and liberty of law-abiding citizens. *See Brinegar,* 338 U.S. at 176, 69 S.Ct. at 1311. The on-the-spot determination often requires an "exercise of judgment, which 'turn[s] on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Maxwell,* 998 F.2d at 434 (citing *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)). In recognition of the endless scenarios confronting police officers in their daily regimen, courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer*—seeing what he saw, hearing what he heard." *Mahoney v. Kesery,* 976 F.2d 1054, 1057 (7th Cir.1992) (citing *Richardson v. Bonds,* 860 F.2d 1427, 1431 (7th Cir.1988)). In practice, then, it can be said that "[p]robable cause—the area between bare suspicion and virtual certainty—describes not a point but a zone," *Llaguno v.*

*Mingey,* 763 F.2d 1560, 1565 (7th Cir.1985) (*en banc*), within which reasonable mistakes will be excused. *See Brinegar,* 338 U.S. at 176, 69 S.Ct. at 1311.

When the question of probable cause arises in a damages suit its resolution typically falls within the province of the jury, though a conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. *Maxwell,* 998 F.2d at 434; *Gerald M.,* 858 F.2d at 382; *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 438 (7th Cir.1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987) ("[W]e hesitate to conclude that 195 years after the fourth amendment was added to the Constitution there must be a jury trial every time the police arrest a person accused by a store guard who says he saw the person shoplifting."). In deciding whether the district court properly resolved this issue on summary judgment, we consider only the facts on which there is no genuine dispute. Akers, a paramedic, told Officers McClellan and Wazny that he saw Abdi Sheik–Abdi strike his wife with a forearm, pushing her backward a step or two, as she tried to help him to his feet. The officers then encountered Sheik–Abdi, who subjected them to verbal abuse and failed to respond to Officer McClellan's offer of choosing between going to the hospital or to jail. McClellan then arrested Sheik–Abdi and placed him in handcuffs. Wazny then transported Sheik–Abdi to a police vehicle while Zeinab Sheik–Abdi denied that the striking had occurred and pleaded with McClellan not to take her husband to jail. Neither Akers nor Zeinab indicated their intention to file a criminal complaint; the officers did not ask Zeinab to corroborate Akers' allegation; and neither officer was aware of any prior incidents of domestic abuse at the Sheik–Abdi residence.

Sheik–Abdi contends that Akers' report, by itself, was insufficient to establish probable cause. In view of the officers' failure to further investigate the incident before making the arrest, Sheik–Abdi draws the "inescapable" conclusion that the battery charge was simply a pretext, and that the officers

really arrested him in retaliation for his use of the slur "Irish scum", directed at McClellan. We note in passing that even if the officers did have bad motives for arresting Sheik–Abdi, the existence of probable cause for an arrest would preclude a § 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution. *Mark v. Furay,* 769 F.2d 1266, 1268–69 (7th Cir.1985). We also must bear in mind that whether Sheik–Abdi actually struck his wife (or whether she actually felt provoked or insulted) is not material to the determination of probable cause; the test is an objective one—it is "what the police know, not whether they know the truth, that matters." *Gramenos,* 797 F.2d at 439.

■ We find that a prudent officer would have believed that probable cause existed to arrest Sheik–Abdi for the crime of battery. Under Illinois law, a battery is committed when a person intentionally or knowingly without legal justification and by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provocative nature with an individual. 720 ILCS 5/12–3. While everyone agrees that Zeinab Sheik–Abdi bore no contemporary markings of bodily harm, we believe that, in the circumstances, Akers' statement adequately formed the basis of a reasonable belief that an insulting or provocative contact had occurred. This court has consistently held that "[w]hen an officer has 'received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth,' he has probable cause." *Grimm v. Churchill,* 932 F.2d 674, 675 (7th Cir.1991); *Gerald M.,* 858 F.2d at 381; *see also Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir. 1988) (stating that an identification given by

a "lucid" victim would establish probable cause); *Gramenos,* 797 F.2d at 439 ("a 'prudent' officer may balk ... if the person leveling the accusation is babbling or inconsistent."). Though we have suggested that evidence of interviews and investigations may be a relevant factor in a probable cause analysis, *see Simmons v. Pryor,* 26 F.3d 650, 654–55 (7th Cir.1993); *Gerald M.,* 858 F.2d at 381, it is not in any way a prerequisite to a finding of probable cause. Where there is a lapse of time between the alleged lawbreaking and the arrest, as was the case in *Simmons* and *Gerald M.,* we find it more likely that some type of investigation—for example, the questioning of witnesses—will be appropriate. Here, by contrast, as soon as the officers came upon the scene they were informed that a highly intoxicated man had struck his wife and almost instantaneously encountered the purported assailant in a belligerent and agitated state hurling verbal abuse in their direction. Even in the absence of a blanket rule that the police always may arrest on the basis of a single coherent eyewitness, *see Gramenos,* 797 F.2d at 439, we find that their decision to do so in this case was reasonable. A paramedic responding to a call, like a guard in a supermarket, *see id.,* is "not just any witness," *id.,* and in the usual case the police may reasonably take the paramedic at his word without fear of "being mulcted in damages." *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). This is the usual case; Akers was an eyewitness, the facts he related to the officers (if he told the truth) established a crime, and the officers had no reason to disbelieve Akers' statement.[5] The officers' decision to arrest Sheik–Abdi for battery easily falls within the zone of probable cause (and even more easily into the zone

---

5. Of course, as Judge Easterbrook has stated, the police

"may discover, to their dismay, that when they do not conduct an investigation they cannot get a conviction.... But the fourth amendment does not define as probable cause whatever good police practice requires, or whatever proves necessary to prevail at trial.... Good police practice may require interviews, but the Constitution does not require police to follow the best recommended practices. There is a

gap, often a wide one, between the wise and the compulsory. To collapse those two concepts is to put the judicial branch in general superintendence of the daily operation of government, which neither the fourth amendment nor any other part of the Constitution contemplates."

*Gramenos,* 797 F.2d at 440–42. Indeed, Sheik–Abdi never was formally charged with battery to his wife, and the charges against him for battery to McClellan were dropped at the officer's request.

of qualified immunity), and the district court properly concluded so on summary judgment.[6]

### B.

■ Sheik–Abdi next contends that Akers is subject to § 1983 liability because he unleashed the chain of events leading to the arrest by inviting the officers to the home, acquiescing in their decision to arrest, and failing to respect Sheik–Abdi's right to refuse medical treatment. This claim is without merit. Section 1983 creates a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation. *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983). Akers and his partner Hagler arrived at Sheik–Abdi's residence after receiving a call from his obviously distressed wife reporting that her husband was unconscious. After the paramedics entered the home (with Zeinab Sheik–Abdi's consent) they discovered Abdi Sheik–Abdi in an inebriated and semi-coherent state and attempted to check his vital signs (knowing that his wife had reported that he was found unconscious moments earlier). Sheik–Abdi then struggled to his feet and began cursing and waving his arms at the paramedics. Fearing that a volatile situation might be developing, the paramedics, in accordance with a sensible hospital policy, called for police assistance. We find this course of action eminently reasonable, and we note that Sheik–Abdi cites to no authority suggesting that paramedics

need probable cause to believe that a crime has been committed before summoning the police to assist with an emergency situation.[7]

■ Sheik–Abdi likewise provides no legal support for his argument that Akers had a duty to prevent the police officers from turning a medical mission into a law enforcement situation by arresting Sheik–Abdi. The fact that Akers did not intend to file a criminal complaint or may even have thought the officers' actions unreasonable is of no moment here because, as the district court noted, Akers had no authority to intervene. Acting on the information they received from Akers, the police independently determined that probable cause existed to arrest Sheik–Abdi for battery to his wife. Thus, even if the arrest had been unlawful, Akers would not have been liable as he did not participate in the decision to arrest.

■ Finally, in view of Sheik–Abdi's erratic behavior, we will not second-guess the soundness of the paramedics' decision to summon the police prior to (or instead of) offering Sheik–Abdi an opportunity to sign a release form indicating his desire not to be treated. Furthermore, we note that there is no allegation, either in the complaint or the record, that Sheik–Abdi ever received any medical treatment, either from the paramedics or from anyone at the hospital. Accordingly, even if the rationales of *Cruzan v. Director of Missouri Health Department,* 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (stating that a competent person has a liberty interest under the Due Process

---

**6.** Because we find that the officers were lawfully within the home and had probable cause to arrest, we do not reach the officers' alternative arguments that probable cause also existed under the Illinois Domestic Violence Act, 750 ILCS 60/301–304.

**7.** According to Sheik–Abdi, *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), "make[s] clear that at the point the non-law enforcement officer invokes criminal process, which Akers did by directing Hagler to summon the police, he must do so 'only upon a traditional showing of probable cause ...'" This argument misapplies *Tyler* and misapprehends the purpose of the paramedics' request for police assistance. *Tyler* stands for the proposition that firefighters may enter a burning building without a warrant and remain within the

building to put out the blaze and for a reasonable time thereafter to investigate its cause and to seize any evidence of arson that is in plain view. *Id.* at 509–10, 98 S.Ct. at 1949–50. As the Court stated, the warrant procedures governing administrative searches attach only to subsequent entries into the building that are clearly detached in time from the initial exigency. *Id.* at 511, 98 S.Ct. at 1950–51. Thus, if *Tyler* applies at all to this case, it supports the defendants by recognizing that emergencies justify warrantless entries and that evidence in plain view may be seized following such an lawful entry. Furthermore, we do not believe that the paramedics "invoked" the "criminal process" by asking the police to assist in the treatment of an intoxicated and possibly belligerent citizen; the criminal process was invoked in this case by the officers' decision to arrest the plaintiff for battery.

Clause in refusing unwanted medical treatment that must be balanced against relevant state interests and assuming, for purposes of that case, that the Constitution would grant a competent person a protected right to refuse lifesaving hydration and nutrition), and *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (establishing a right to a due process hearing before an inmate can be administered psychotropic drugs), could be extended to the circumstances presented here, the fact that no forced treatment is alleged to have actually taken place frees Akers from any potential § 1983 liability.

### C.

 Finally, Sheik–Abdi claims that his constitutional rights were violated when Officer Brewer signed the complaint charging Sheik–Abdi with aggravated battery even though Brewer had no first-hand knowledge of the facts to which he attested. This claim also is without merit. In a suit under § 1983, the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. *Gramenos*, 797 F.2d at 434. Under Illinois law, a prosecution may be commenced by any of three processes: indictment, information, or complaint. 725 ILCS 5/111–2(a)-(c). An information, such as that used in this case, "shall be signed by the state's attorney and sworn to by him or another." 725 ILCS 5/111–3(b). Sheik–Abdi seeks support from *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), a case in which the Supreme Court held that the initiation of a prosecution for first degree murder on the basis of an information (rather than an indictment) satisfied the Due Process Clause of the Fourteenth Amendment. This rather unremarkable proposition does not advance Sheik–Abdi's cause. Neither *Hurtado*, nor any other principle of federal law, makes a properly attested complaint or information necessary to an arrest or even a criminal prosecution. *See Gramenos*, 797 F.2d at 434. Pursuant to department policy, Brewer went to the State's Attorney's Office to sign the complaint against Sheik–Abdi which was typed from information presumably submitted by McClellan while he was still on duty.

Whether this policy (or Brewer's execution of it) was lawful is a question of state law. Thus, even if Brewer's filling out of the paperwork associated with McClellan's arrest violated state law, the district court properly granted summary judgment for Brewer on Sheik–Abdi's § 1983 claim.

### III.

 Where, as here, a defendant has pleaded a defense of qualified immunity, it is appropriate for courts to approach a summary judgment motion using a two-step analysis: (1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question? *See Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir.1994). As we noted in *Donovan*, a negative answer to the first question conclusively resolves the matter in favor of the defendant. *Id.* On the basis of the foregoing analysis, we conclude that Sheik–Abdi's allegations fail to establish a constitutional violation. Accordingly, the district court's grant of summary judgment for all of the defendants is

AFFIRMED.