PRESENT:  All the Justices

ALLEN POULSON

                                     OPINION BY
v.  Record No. 240081                JUSTICE STEPHEN R. McCULLOUGH
                                    April 10, 2025
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Allen Poulson, who was ultimately convicted of driving under the influence, challenges several aspects of his questioning and arrest on Fourth and Fifth Amendment grounds. Specifically, he argues that he was in custody and, therefore, he should have been given *Miranda* warnings.  He further argues that the officers should have obtained an arrest warrant before he was arrested on the curtilage of his home.  Finding no error, we affirm the judgment of the Court of Appeals.

BACKGROUND

On December 23, 2021, Police received a call about a maroon-colored pickup truck that was stuck in a ditch.  The caller observed the driver throw bottles from the truck.  Shortly thereafter, a caller identifying himself as Allen Poulson called emergency dispatch, stating that everything was fine and there was no need for a law enforcement response.  When State Trooper Robert Flynn arrived at the scene, after midnight, the truck was gone.  He could see tire marks in the ditch and that a vehicle had struck a culvert, damaging it.  There were also two beer bottles of Michelob Ultra and one can of Natural Light or "Natty Light" on the ground.

Trooper Flynn drove to Poulson's home, where he was joined by another state trooper and two sheriff's deputies from Accomack County.  A total of four uniformed officers, driving four marked police vehicles, were parked outside of Poulson's home.  The police vehicles were

in the driveway and blocked it. Flynn observed a maroon pickup truck with front end damage on the driver's side and mud "consistent with [the] vehicle that had struck [the] ditch." In the back of the truck, Flynn noticed beer cans, including a Natural Light can. A porch light came on from Poulson's residence, and Poulson emerged wearing boxer shorts and a t-shirt. It was very cold outside. Trooper Flynn's body worn camera captured his exchange with Poulson.

Poulson, a police officer himself, explained that he had swerved to avoid a deer and struck the culvert. Poulson's speech was slurred, and his breath smelled of alcohol. It was apparent to Trooper Flynn that Poulson was drunk. Flynn said to Poulson "you want to do me a favor and go through some field sobriety real quick." Poulson continued to speak with Flynn. Poulson denied drinking before the crash. He admitted to drinking afterwards, stating that he had consumed three or four beers and four or five shots. After a few more questions about his drinking, Trooper Flynn then said, "[w]e'll just go through a couple tests right here if you'll be cooperative for it." Poulson agreed. Poulson was not handcuffed. Poulson asked if he could go inside to change, and Flynn agreed. Flynn did not follow him inside. After putting on more clothes, Poulson came back outside. Poulson produced a driver's license, which he offered to show to Trooper Flynn. Trooper Flynn asked Poulson to "step in front of my car for me, please." Poulson acquiesced. He attempted but failed to perform the field sobriety tests. Trooper Flynn arrested him (and gave him *Miranda* warnings at that point). Poulson was eventually given a blood alcohol test, which yielded a score well above the legal limit for driving.

Poulson was indicted in the Circuit Court of Accomack County on four charges: driving while intoxicated, in violation of Code § 18.2-266; hit and run, in violation of Code § 46.2-894; obstruction of justice, in violation of Code § 18.2-460(A); and illegal dumping on a highway, in violation of Code § 33.2-802. Poulson filed a motion to suppress, arguing that he was seized

2

when police commanded him to perform field sobriety tests, and, therefore, police should have given him *Miranda* warnings. He also argued that he was arrested in violation of the Fourth Amendment because the seizure and the arrest occurred without a warrant or exigent circumstances within the curtilage of his home. Poulson acknowledged that the officers initially had a right to come onto the curtilage. However, he maintained that the initial consensual encounter turned into an illegal seizure. The trial court denied the motion, reasoning that Poulson voluntarily engaged with the officers and was not "coerced in any way." Poulson entered a conditional guilty plea to driving under the influence that allowed him to challenge his seizure and arrest. The Commonwealth dismissed the other charges by *nolle prosequi*.

Poulson appealed to the Court of Appeals. That court affirmed the trial court's judgment in an unpublished opinion. Poulson next appealed to this Court.

## ANALYSIS

I.  THE RECORD SUPPORTS THE TRIAL COURT'S FACTUAL FINDING THAT THE ENCOUNTER BETWEEN POULSON AND THE POLICE WAS CONSENSUAL AND THAT POULSON WAS NOT SEIZED UNTIL HE WAS PLACED UNDER ARREST.

The first component of Poulson's assignment of error is that the courts below "erred in denying Appellant's Motion to Suppress, specifically erring in finding that Appellant was not seized on the curtilage of his home and in-custody, which would have required *Miranda* warnings." Poulson contends that while the encounter began as a consensual encounter, the presence of four armed and uniformed police officers, as well as the statements and the tone of voice employed by Trooper Flynn, transformed the encounter into a seizure.

The Fourth Amendment preserves "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "An assertion that a person was 'seized,' within the meaning of the Fourth Amendment, presents

3

a mixed question of law and fact that is reviewed de novo on appeal." *McCain v. Commonwealth*, 261 Va. 483, 489 (2001) (citation omitted). "In considering such questions," we are "required to give deference to the factual findings of the trial court." *Id.* at 490.

A person has been "seized" by police within the meaning of the Fourth Amendment if, considering the totality of the circumstances, "a reasonable person would believe that he was not free to leave the scene of the encounter." *Id.* at 490 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Not all encounters between citizens and police officers constitute seizures; "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." *Mendenhall*, 446 U.S. at 552 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

The decision whether the encounter was consensual must be made based on the totality of the circumstances. *Harris v. Commonwealth*, 266 Va. 28, 32 (2003).

> Various factors have been identified as relevant in determining whether a seizure has occurred, including the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave.

*Id.* at 32 (citation omitted).

Poulson contends that he was seized once Trooper Flynn issued what he characterizes as commands that he should perform field sobriety tests. He also points to the presence of four police vehicles and four uniformed officers on his property. We have reviewed the video footage of the encounter, as well as the trial court record. The trial court concluded that the encounter was voluntary until the point where Poulson was arrested. "The presence of consent is a factual question to be determined by the trier of fact based on the totality of the circumstances, and we

4

reverse a trial court's decision regarding the presence of consent only when it is plainly wrong." *Hawkins v. Commonwealth*, 65 Va. App. 101, 107 (2015) (citation omitted); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (consent to search "is a question of fact to be determined from the totality of all the circumstances"); *Flippo v. West Virginia*, 528 U.S. 11, 15 (1999) ("the issue of consent is ordinarily a factual issue"). On this record, we cannot say that the trial court was wrong. Poulson initiated the encounter when he emerged from his house and engaged the officers in conversation. The overall discussion between Poulson and Trooper Flynn was cordial rather than peremptory. Poulson was not handcuffed. When Poulson asked to go inside to put on some clothes, Trooper Flynn agreed and did not follow him inside. Finally, the questioning lasted about four minutes.

We further conclude that *Miranda* warnings were not required. "The safeguards required by *Miranda* must be afforded to a suspect as soon as the police have restricted his freedom of action to a 'degree associated with formal arrest.'" *Dixon v. Commonwealth*, 270 Va. 34, 39 (2005) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). Some of the factors that courts have considered in answering the question of whether a suspect is in custody include:

> whether police were able to physically seize the suspect, whether the suspect was physically restrained, whether firearms were drawn, whether there was physical contact between police and the suspect, whether the suspect was confined in a police car, whether police told the suspect he or she was free to leave, whether police engaged in other incidents of formal arrest such as booking, whether friends or relatives of the suspect were present, and whether more than one officer was present.

*Hasan v. Commonwealth*, 276 Va. 674, 679-80 (2008) (citing 2 Wayne R. LaFave et al., Criminal Procedure § 6.6(f) (3d ed. 2007)).

"The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). Poulson chose

to emerge from his home to interact with the police and he agreed to perform the field sobriety tests. After Poulson consented to perform field sobriety tests, he went back inside his home unescorted to put on more clothes. He was not patted down at any point. Until his arrest, he was not handcuffed or restrained in a police vehicle. Viewing the testimony and the video of the encounter does not indicate a restraint on Poulson's freedom of action to a degree associated with formal arrest. The trial court found that his interaction with the police was consensual, and, applying the standard of review, we conclude that the Court of Appeals correctly affirmed the trial court on these questions.

II. ONCE OFFICERS ARE LAWFULLY PRESENT IN THE HOME OR ON THE CURTILAGE, THEY CAN EFFECTUATE AN ARREST WITHOUT A WARRANT IF THE ARREST IS OTHERWISE PROPER.

The second component to Poulson's assignment of error is that the trial court and the Court of Appeals erred "in finding that the arrest on the curtilage of the property was lawful." Poulson posits that an arrest on the curtilage requires either a warrant or exigent circumstances. Because police had neither, Poulson contends, his arrest was in violation of the Fourth Amendment. According to Poulson, the right of law enforcement to be present (because of a voluntary, consensual encounter) does not confer the right to arrest. We disagree. We conclude, in accord with the overwhelming weight of authority, that when the officers are lawfully present in the home or on the curtilage, and the arrest is otherwise proper, they may proceed to effect an arrest without the additional step of obtaining an arrest warrant.

We apply a *de novo* standard of review in determining whether a person has been seized or arrested in violation of the Fourth Amendment. *McCain*, 261 Va. at 489. We are bound, however, by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. *Malbrough v. Commonwealth*, 275 Va. 163, 168-69 (2008).

6

Protection of the home, and the immediate extension of the home, the curtilage, is at the heart of the Fourth Amendment.  "[W]hen it comes to the Fourth Amendment, the home is first among equals."  *Florida v. Jardines*, 569 U.S. 1, 6 (2013).  "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'"  *Id.* (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).  "*[P]hysical entry* of the home is the chief evil against which the wording of the Fourth Amendment is directed."  *Payton v. New York*, 445 U.S. 573, 585 (1980) (emphasis added) (quoting *United States v. United States Dist. Court*, 407 U.S. 297, 313 (1972)).

The curtilage is "the area 'immediately surrounding and associated with the home.'"  *Jardines*, 569 U.S. at 6 (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).  We have explained that the curtilage is "a space necessary and convenient, habitually used for family purposes and the carrying on of domestic employment; the yard, garden or field which is near to and used in connection with the dwelling."  *Wellford v. Commonwealth*, 227 Va. 297, 302 (1984) (quoting *Bare v. Commonwealth*, 122 Va. 783, 795 (1917)).  The curtilage is treated as "part of the home itself for Fourth Amendment purposes."  *Jardines*, 569 U.S. at 6 (quoting *Oliver*, 466 U.S. at 180).  The United States Supreme Court has explained that "[t]he protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened."  *California v. Ciraolo*, 476 U.S. 207, 212-13 (1986).

In this instance, counsel concedes that, at the outset, the officers were lawfully present on the curtilage.  The trial court concluded, and we agree, that until he was arrested, the interaction between Poulson and the police was consensual.  The United States Supreme Court has observed that "*[a]bsent consent or exigent circumstances*, a private home may not be entered to conduct a

7

search or effect an arrest without a warrant." *Donovan v. Dewey*, 452 U.S. 594, 598 n.6 (1981) (emphasis added). If officers are lawfully present, however, whether inside the home or on the curtilage, they need not additionally obtain an arrest warrant to make a lawful arrest when they have probable cause for the arrest.

The United States Court of Appeals for the Seventh Circuit persuasively explained why the Fourth Amendment does not require the additional step of obtaining a warrant when the officers are lawfully present inside the home or on the curtilage. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1245 (7th Cir. 1994). Quoting Professor LaFave, the court warned against "assum[ing] that the warrant requirement really goes to the matter of arrest rather than the matter of entry." *Id.* (quoting 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 6.1(c) at 584 (2d ed. 1987)). That assumption is "wrong . . . [b]ecause (i) there is no general requirement that arrests be made with a warrant, and (ii) an arrest within premises is no 'more threatening or humiliating than a street arrest.'" *Id.* (quoting LaFave, *supra* § 6.1(c) at 584 (footnotes omitted)). The holding in *Payton v. New York* "is grounded (as the [United States Supreme] Court put it) in 'the breach of the entrance to an individual's home.' That is, it is the otherwise unauthorized entry and not the arrest which gives rise to the warrant requirement." *Id.* (quoting LaFave, *supra* § 6.1(c) at 584). The court observed that "[o]nce the veil of the home has been legally pierced, we see no need for police officers to turn a blind eye to crime, so long as the arrest is otherwise effected in compliance with the constitutional requirement of probable cause." *Id.*

Other courts have agreed. *See Augustine v. Doe*, 740 F.2d 322, 325 (5th Cir. 1984) (stating that consent to entry is assumed to be sufficient to permit warrantless arrest); *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) (in the absence of an arrest warrant,

consent or exigent circumstances permit officers to enter a residence to effectuate an arrest);

*United States v. Greer*, 607 F.3d 559, 563 (8th Cir. 2010) ("Without consent or exigency, or an arrest warrant for a resident, the police generally must have a search warrant to enter a home."); *United States v. Briley*, 726 F.2d 1301, 1303 (8th Cir. 1984) (when police have "valid and voluntary consent" to enter, they may make a warrantless in-home arrest); *United States v. Struckman*, 603 F.3d 731, 747 (9th Cir. 2010) ("[P]olice officers must either obtain a warrant or consent to enter before arresting a person inside a home or its curtilage."); *Bashir v. Rockdale County*, 445 F.3d 1323, 1328 (11th Cir. 2006) ("[A] warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest *and* either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant."); *Moore v. Pederson*, 806 F.3d 1036, 1043 (11th Cir. 2015) (holding that a "warrantless arrest in a home" is allowed if the "arresting officer had probable cause to make the arrest and either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant").

Academic treatises also note that when the police are lawfully present in the home because of consent, they may arrest a suspect without a warrant. *See* 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 6.1(c) (6th ed. 2024) ("[T]he warrant requirement is applicable only 'absent consent.'  Thus, the lower courts have rather consistently held that no warrant is needed when the person to be arrested or some other person with a sufficient interest in the premises to admit visitors . . . voluntarily consented to entry by a known police officer.") (footnotes omitted); 24 Moore's Federal Practice − Criminal Procedure § 604.04 (Matthew Bender 3d ed.) ("The defendant's consent to entry allows law enforcement officers to enter and effect a warrantless arrest.").  Most of those cases deal with an

9

arrest inside the home.  The same logic applies to the curtilage.  The curtilage does not benefit from greater protections than the inside of the home.[*]

In accord with this persuasive authority, we conclude that because the officers were lawfully present on the curtilage, and because they had probable cause to arrest, the Fourth Amendment did not require them to obtain an arrest warrant to arrest Poulson.

CONCLUSION

We affirm the judgment of the Court of Appeals.

*Affirmed*.

---

[*] Poulson also assigns error to the Court of Appeals' failure to rule on his entire assignment of error, "specifically whether or not a police officer may arrest someone while they are on their curtilage of their property absent a warrant or probable cause coupled with an exigency."  It may be that the Court of Appeals intended to address this argument in the second footnote of its opinion.  At any rate, assuming the Court of Appeals should have ruled on that question, any error was harmless for the reasons noted above.