**Gerald R. WOLLIN, Plaintiff–Appellant,**

v.

**Bruce GONDERT, Deputy Sheriff, Joseph Seidel, Deputy Sheriff and Jefferson County, Wisconsin, Defendants–Appellees.**

No. 98–1857.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1998.

Decided Sept. 2, 1999.

Jeff Scott Olson (argued), Madison, WI, for Plaintiff–Appellant.

· Tamara Hayes O'Brien (argued), Whyte Hirschboeck Dudek S.C., Milwaukee, WI, for Defendant–Appellee.

Before POSNER, Chief Judge, CUDAHY and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

In August of 1997, Plaintiff–Appellant Gerald R. Wollin ("Wollin") filed a civil action pursuant to 42 U.S.C. § 1983 against Sheriff's Deputies Bruce Gondert and Joseph Seidel of the Jefferson County (Wisconsin) Sheriff's Department alleging that he was arrested for contempt of court without probable cause in violation of the Fourth and Fourteenth Amendments. The complaint also named Jefferson County ("the County") as a defendant alleging that the deputies were acting within the scope of their employment when they effectuated Wollin's arrest therefore, according to Wollin's theory, requiring the County to indemnify the officers.

The County and the deputies filed a joint motion for summary judgment arguing that the deputies had probable cause to arrest Wollin and furthermore, even if the court concluded that probable cause did not exist, the officers were still entitled to qualified immunity. The defendants further argued that there were no substantive claims stated against the County. The court granted Jefferson County summary judgment, finding that the County was not a proper defendant because "the undisputed facts indicate that the County had no policy or custom to violate constitutional rights or that any policy of the County caused the alleged violation of plaintiff's constitutional rights." The trial judge also granted summary judgment to the deputies finding that they had probable cause to arrest Wollin.[1] Wollin appeals the grant of summary judgment to officers Gondert and Seidel, but does not appeal the grant of summary judgment to the County. We AFFIRM.

## BACKGROUND

In August of 1995, Wollin filed an action for divorce in the Jefferson County Circuit Court. Three months later, Wollin's wife filed a motion and affidavit requesting that the Jefferson County Family Court Commissioner ("the Commissioner") issue an order requiring that Wollin, among other things, vacate the marital residence, cease harassing her, and avoid all contact with her. In support of her motion, Ms. Wollin alleged that her husband had threatened to inflict physical harm upon her and that she had "grave fears for her personal safety." On November 28, 1995, at 3:00 p.m., the Family Court Commissioner held a hearing on the wife's motion and while hearing testimony from the estranged cou-

---

1. Because the district court found probable cause, it never addressed the question of whether the officers were entitled to qualified immunity.

ple, he was made aware of the fact that Wollin kept a number of firearms as well as ammunition in their home. After this testimony was presented and the Commissioner was making his oral ruling but before completion of the same, Wollin exited the courtroom and journeyed to his home.[2]

Shortly after the hearing concluded, the Court Commissioner telephoned Sergeant Paul Wallace of the Jefferson County Sheriff's Department and informed him that, based on the evidence adduced at the hearing, the defendant-appellant Wollin was believed to have made threats of physical violence against his wife and that he stored firearms and ammunition in his home. According to Sergeant Wallace's uncontested affidavit,[3] the Family Court Commissioner expressed his concern at this time that Wollin might not comply with the court order to surrender his firearms and ammunition. The Commissioner further requested that officers be immediately dispatched to the Wollin residence to take delivery of the weapons and ammunition. Sergeant Wallace inquired of the Commissioner if Wollin could be taken into custody if he failed to comply with the court's order, to which the Commissioner responded that the "intentional violation of a court order could result in arrest and a criminal charge for contempt." Sergeant Wallace met with Deputy Gondert and relayed the Commissioner's statement, and personally instructed Deputy Gondert that if Wollin refused to turn over his weapons, "he should be taken into custody." Deputies Gondert and Seidel were dispatched to Wollin's residence.

When the deputies arrived at Wollin's residence, they knocked on the front door and the defendant-appellant answered. According to Deputy Gondert's uncontested affidavit, while Wollin remained just inside the doorway of his residence, the deputies advised him that at the end of the hearing, the Commissioner ordered Wollin to immediately surrender his guns and ammunition. Wollin claimed that he was unaware of any such order and asked to see a written copy of it and further stated that because the officers were unable to produce a written copy of the court order he refused to surrender his guns and ammunition. At this time, the deputies advised Wollin that they would apply for the issuance of a summons and complaint charging him with criminal contempt of court. Before the officers left the premises, however, Wollin exited his home, portable phone in hand, and advised the deputies that someone from the Sheriff's Department wanted to speak with them. The officers returned, and after a brief phone conversation, Deputy Gondert advised Wollin that he was under arrest for contempt of court because of his refusal to comply with the Commissioner's order to surrender his firearms and ammunition.[4] A brief struggle ensued when

2. During his deposition, Wollin testified that at the hearing he became angry and exited the courtroom while the Commissioner was in the middle of pronouncing the order. When Wollin exited, the Commissioner had just stated that Wollin was required to vacate the marital residence by the following evening at 6:00 p.m.

3. Sergeant Wallace's affidavit, filed in support of the defendants' motion for summary judgment, is attached to this opinion.

4. The Commissioner's verbal order (pronounced immediately at the conclusion of the November 28 hearing) was reduced to a written order on November 29, 1995, but signed *nunc pro tunc* to 4:30 p.m. on November 28, 1995. The written order stated, among other

things, that Wollin "has implied threats of physical harm to [his wife], resulting in a reasonable apprehension of harm [to her]." Based on this finding, the Commissioner ordered that "[a]ll firearms and ammunition in the possession or under the control of [Wollin] shall be delivered to the Jefferson County Sheriff's Department forthwith, that is, immediately upon the conclusion of the hearing at approximately 5:00 p.m. November 28, 1995." The final paragraph of the order stated that "[t]he Jefferson County Sheriff's Department shall be given a copy of this Order and requested to enforce the same." As previously stated, the order also required Wollin to vacate the marital residence by November 29, 1995, at 6:00 p.m.

Wollin was handcuffed.[5]

On August 18, 1997, Wollin filed a civil action pursuant to 42 U.S.C. § 1983 against the County of Jefferson, Wisconsin and Deputies Gondert and Seidel, alleging that their arrest of him without probable cause or lawful authority was in violation of the Fourth and Fourteenth Amendments.[6] On January 15, 1998, the County and officers filed a joint motion for summary judgment, asserting that there existed both probable cause and lawful authority for the arrest and that at that time the officers were acting in their official capacities as duly appointed deputy sheriffs of the Jefferson County, Wisconsin Sheriff's Department and were thus entitled to qualified immunity. Wollin's response brief argued, among other things, that the deputies lacked lawful authority "to initiate criminal contempt proceedings by arrest just because [they were] aware that an individual [was] in violation of a court order in a civil case."

On February 19, 1998, the district judge granted summary judgment to each of the deputy defendants as well as Jefferson County. In dismissing the claims against the deputies, the court ruled that the officers had probable cause to arrest Wollin, finding that:

> [b]ased on the facts and circumstances within the [deputies'] knowledge at the time of arrest, defendants had probable cause to believe that plaintiff was violating the Court Commissioner's order to surrender his weapons which constituted criminal contempt under Wis. Stats. Sec. 785.03(1)(b). Defendants had probable cause to arrest plaintiff for criminal contempt based on Wisconsin law.

The court further determined that any claim that the deputy sheriffs lacked lawful authority to make the arrest was necessarily dependent upon the probable cause determination, and because the defendants had probable cause to arrest Wollin, his argument that the deputies lacked lawful authority also failed. On appeal, Wollin challenges only the trial court's grant of summary judgment to Deputies Gondert and Seidel.

## ISSUES

Wollin contends that the district court improperly granted summary judgment to Deputies Gondert and Seidel on his § 1983 claim. Specifically, Wollin argues that the granting of summary judgment was improper because the deputies lacked both probable cause and lawful authority to effectuate his arrest. He argues further that the deputies are not entitled to qualified immunity because they were clearly acting outside the scope of the Commissioner's authority.

## DISCUSSION

### A. Standard of Review

██ We review *de novo* the district court's grant of summary judgment. *See Porter v. Whitehall Lab., Inc.*, 9 F.3d 607, 612 (7th Cir.1993). Summary judgment is appropriately granted if the party seeking the judgment demonstrates that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law through record materials filed with the court (i.e. pleadings, depositions, answers to interrogatories, admissions on file, and affidavits). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Reid v. Norfolk & Western Ry. Co.*, 157 F.3d 1106,

---

5. As a result of Wollin's failure to cooperate with the deputies, the District Attorney charged Wollin with obstructing an officer and resisting arrest. The charges were later dismissed without prejudice after the State determined it would not oppose Wollin's motion to dismiss for insufficiency of the complaint.

6. Wollin also alleged that the deputies used excessive force in effectuating his arrest, but the district court dismissed that claim upon stipulation of the parties and it is not at issue on appeal. As mentioned previously, Wollin also sued the County but the claim was dismissed by the trial judge and is not at issue on appeal.

1110 (7th Cir.1998); Fed.R.Civ.P. 56(c). Once the movant has met this burden, the nonmovant must set forth specific facts demonstrating that a genuine issue of material fact exists for trial, and may not rely upon mere allegations or denials of the pleadings. *See Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1031 (7th Cir.1998); Fed.R.Civ.P. 56(e). In determining whether a genuine issue of material fact exists, we consider the evidence in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Moreover, the proper standard of review in qualified immunity cases where probable cause is at issue is *de novo. See Jones v. Watson*, 106 F.3d 774, 777 n. 7 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 56, 139 L.Ed.2d 20 (1997).

## B. Probable Cause

Section 1983 of Title 42 authorizes a federal cause of action against any person who, acting under color of state law, deprives another of rights secured by federal law or the United States Constitution. Wollin alleges that Deputies Gondert and Seidel violated his Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures because they lacked probable cause or lawful authority to effectuate his arrest on November 28, 1995.

■■■ On appeal, Wollin argues that "contempt of court ... does not constitute a crime in the State of Wisconsin, and therefore can never give rise, in and of itself, to probable cause for a warrantless arrest." The defendants respond that this case does not involve contempt "in and of itself" because in addition to the deputies' knowledge that Wollin was in contempt of the court's order for failure to surrender his firearms, the officers had verbal telephone instructions from the Commissioner, as interpreted and relayed to them by their commanding officer Sergeant Wallace, that Wollin be arrested for contempt of court if he refused to comply with the court order by failing to immediately turn over his firearms and ammunition.

With an unlawful arrest claim in a § 1983 action when a defense of qualified immunity has been raised, we will review to determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause, existed. *See Edwards v. Cabrera*, 58 F.3d 290, 293 (7th Cir.1995); *see also Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). Courts have referred to the second inquiry as asking whether the officer had "arguable" probable cause. *See Lee v. Sandberg*, 136 F.3d 94 (2d Cir.1997); *Kelly v. Bender*, 23 F.3d 1328 (8th Cir.1994); *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir.1997) (per curiam). Arguable probable cause exists when "a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Gold*, 121 F.3d at 1445 (citation omitted). Officers are entitled to summary judgment on qualified immunity grounds if their actions were not objectively unreasonable at the time they were taken. *Lee*, 136 F.3d at 102. The court should ask if the officer acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed several years after the fact. *Hunter*, 502 U.S. at 228, 112 S.Ct. at 537.

*Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir.1998) (emphasis and citations in original). Furthermore,

[i]n *Rakovich [v. Wade*, 850 F.2d 1180 (7th Cir.1988) (en banc) ], this court has ... stated that "under *Harlow [v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ] an objective immunity analysis at the summary judgment stage prior to discovery does not include

an *evaluation* of intent. This is because evaluating intent would be a factual analysis, whereas the objective inquiry is a legal question." *Rakovich*, 850 F.2d at 1210 (emphasis in original). Such an interpretation is consistent with *Harlow*'s approval of deciding qualified immunity cases by summary judgment because "[a]n objective analysis is less fact bound than a subjective analysis, making summary judgment a practical and effective means of terminating unnecessary litigation." Id. at 1205. "Thus ... a qualified immunity analysis entails a purely *objective inquiry to determine* whether at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented." *Polenz*, 883 F.2d at 554 (citing *Cleveland–Perdue v. Brutsche*, 881 F.2d 427 (7th Cir. 1989)). . . . ***It is with such an objective approach in mind that we review this case.***

*Auriemma v. Rice*, 910 F.2d 1449, 1452–53 (7th Cir.1990) (emphasis added unless noted in text).

## C. Qualified Immunity

Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). In *Jenkins v. Keating*, 147 F.3d 577, 584–85 (7th Cir.1998), we emphasized the rationale behind the doctrine of qualified immunity, explaining that "[t]he necessity of protecting [law enforcement] officers from undue interference with their duties and from potentially disabling threats of liability has given rise to the doctrine of qualified immunity . . . ." (internal quotations omitted); *see also Harlow*, 457 U.S. at 806, 102 S.Ct. 2727; *Tangwall v. Stuckey*, 135 F.3d 510, 514 (7th Cir.1998). Moreover, immunity acts as a safeguard to government and protects the public at large by "avoid[ing] excessive disruption of government and permitt[ing] the resolution of many insubstantial claims on summary judgment." *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727; *see also* M*alinowski v. Deluca*, 177 F.3d 623, 626–27 (7th Cir.1999).

■ Qualified immunity shields law enforcement officers from § 1983 liability "if *either* the federal law [they are] asserted to have breached was not clearly established at the time of the alleged violation or there exists no dispute of material fact which would prevent a finding that [the officer's] actions, with respect to following such clearly established law, were objectively reasonable." *Tangwall*, 135 F.3d at 515 (emphasis in original). Accordingly, whether the defendants are entitled to summary judgment on qualified immunity grounds depends on whether a reasonable officer, in light of the information he possessed at the time of the arrest, could have believed he had probable cause to arrest Wollin. *See Jenkins*, 147 F.3d at 585; *Tangwall*, 135 F.3d at 518.

■ Probable cause for an arrest exists if, at the time of the arrest, the facts and circumstances within the police officer's knowledge were sufficient to warrant a reasonable belief that the suspects had committed, were committing, or were about to commit a crime. *See Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir.1999); *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir.1992); *Simkunas v. Tardi*, 930 F.2d 1287, 1291 (7th Cir.1991). In *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir.1998), we addressed the issue of probable cause in the context of a § 1983 case where the plaintiff alleges to have been arrested without probable cause and the defendant claims qualified immunity:

[w]ith an unlawful arrest claim in a § 1983 action when a defense of qualified immunity has been raised, we will review to determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed

that probable cause existed. *See Edwards v. Cabrera*, 58 F.3d 290, 293 (7th Cir.1995) (citation omitted.) Courts have referred to the second inquiry as asking whether the officer had "arguable" probable cause. (Citations omitted). Arguable probable cause exists when "a reasonable police officer in the same circumstances and with the same knowledge ... as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." (Citation omitted.) (emphasis in original). Moreover, "if probable cause is lacking with respect to an arrest, despite an officer's subjective belief that he had probable cause, he is entitled to immunity as long as his subjective belief was objectively reasonable." *Edwards*, 58 F.3d at 293 (citing *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

 As we have held, "[i]n recognition of the endless scenarios confronting police officers in their daily regimen, courts evaluate probable cause 'not on the facts as an omniscient observer would perceive them *but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard.*'" *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir.1994) (emphasis added) (quoting *Mahoney*, 976 F.2d at 1057) (other citation omitted). Probable cause is an objective test, based upon "factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). This flexible, common-sense approach does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable. *See Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

 As noted, there is disagreement among the parties regarding whether contempt of court is a crime in the State of Wisconsin and whether such contempt, in and of itself, constitutes grounds for arrest. But our inquiry for purposes of making a qualified immunity determination is not whether contempt of court is actually a crime in Wisconsin or whether the Commissioner had the authority to order Wollin's arrest. Rather, we must decide whether Deputy Sheriffs Gondert and Seidel could have reasonably believed, as the Commissioner instructed them, that Wollin's actions constituted punitive contempt and, considering all the other facts and circumstances present at the time of arrest, whether "arguable" probable cause existed to make the arrest. *See Humphrey*, 148 F.3d at 725.

As a result of the telephone call from the Family Court Commissioner, prior to Wollin's arrest, Sergeant Wallace understood that if Wollin intentionally disobeyed the court order, his disobeyance would constitute criminal contempt of court and would be grounds for arrest. According to Deputy Gondert's unchallenged affidavit, he was instructed that if Wollin refused to submit his weapons upon proper demand, the deputies "were authorized to take physical custody of Mr. Wollin...." This statement is confirmed in the Jefferson County Sheriff's Department Offense Report drafted by Deputy Gondert on November 29, 1995, the day after the arrest, wherein he confirms he was instructed that if Wollin stepped outside his residence after refusing to turn over his weapons and ammunition, "I could then take physical custody of him for the violation of the court order." In conformity with these instructions, Deputies Gondert and Seidel arrested Wollin outside his home after Wollin failed to surrender his weapons and ammunition. Under these circumstances, the deputies could very reasonably have believed that Wollin's deliberate violation of an explicit court order constituted the crime of criminal contempt of court.

 In *Olson v. Tyler*, 825 F.2d 1116, 1120 (7th Cir.1987), we explained

that in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), "[t]he Supreme Court ... lent support to the notion that qualified immunity under section 1983 may be equated with the good-faith exception to the exclusionary rule in the context of arrest and search warrants." Moreover, in *Lowrance v. Pflueger*, 878 F.2d 1014, 1017 n. 4 (7th Cir.1989), we quoted extensively from *Malley*, stating:

> In [*United States v.] Leon*, [468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)], we stated that our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. [*Malley*, 475 U.S. at 345, 106 S.Ct. 1092]....The rule we adopt in no way "requires the police officer to assume a role even more skilled ... than the magistrate." (Citation omitted). It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination ... and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable [under § 1983. *Id.* at 345 n. 9, 106 S.Ct. 1092].

Similarly, a deputy sheriff executing a directive issued by a trained and licensed practitioner of the law and duly appointed officer of the court, as the Commissioner is, cannot be required to second guess the Commissioner's order unless he clearly knows the order is outside the range of the Commissioner's professional competence. *See Malley*, 475 U.S. at 345 n. 9, 106 S.Ct.

1092. A deputy should only disobey a judicial officer's order when to his knowledge and belief the order constitutes "an unacceptable error indicating gross incompetence or neglect of duty." *See id.* We note that the parties disagree whether, under Wisconsin law, civil contempt of court constitutes a crime and could thus serve as grounds for probable cause. Regardless, the deputies could have very reasonably believed that a judicial officer's order to arrest for contempt of court is presumptively valid, and certainly the order would not rise to the level of the Commissioner acting with "gross incompetence or neglect of duty." *See id.*; *see also Upper Lakes Shipping, Ltd. v. Seafarers' Int'l. Union of Canada*, 22 Wis.2d 7, 125 N.W.2d 324 (1963) (the Wisconsin Supreme Court held that when a court instructs law enforcement officers to enforce a civil order, arrest for contempt of the order is warranted). In this case, the order given by the Commissioner was not "an unacceptable error indicating gross incompetence." Moreover, the order, even if outside the scope of the Commissioner's authority,[7] was reasonable because of Wollin's recent actions and statements threatening to inflict physical harm upon his wife, and his possession of firearms and ammunition.

As we stated in *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238–39 (7th Cir.1986), a Sheriff was immune from suit under § 1983 because he "was at all times acting pursuant to an official court order to enforce a validly entered judgment when he performed the allegedly wrongful acts of which [the defendants] now complain." We concluded that "[t]o allow [the plaintiff] to attack the order collaterally by

---

7. Wollin argues that the Commissioner's order itself was unlawful because under Wisconsin law, the Commissioner lacks statutory authority to order an arrest for contempt of court, and apparently the deputies should have known this. However, in the district court, Wollin failed to challenge the authority of the Commissioner to make the order and thus this argument is waived on appeal. *See Weigel v. Target Stores*, 122 F.3d 461, 464 (7th

Cir.1997) ("issues not raised [in district court] are waived on appeal") (citation omitted). Moreover, we note that if the law in this area is as clearly established as the Plaintiff now (on appeal) intimates, we would have expected him to raise the issue earlier—if his attorneys did not make the claim, we cannot impute such knowledge to the deputies and require them to reject and ignore the Commissioner's order.

bringing a § 1983 suit against the Sheriff for damages would require sheriffs ... who enforce properly entered judgments pursuant to facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them." *Id.* at 1239. Such a result is untenable. *Id.* The same rationale applies in Wollin's case. Deputies Gondert and Seidel were acting pursuant to an order, issued by a duly appointed officer of the court, to take Wollin into custody if he failed to surrender his firearms and ammunition to the officers upon demand on November 28, 1995, and the deputies could not be expected to review or reject the Commissioner's unequivocal order to arrest Wollin if he failed to surrender his weapons and ammunition upon demand. Accordingly, we refuse to hold, as Wollin wishes, that the deputies should be subject to civil liability for enforcing the Court Commissioner's order.

The conclusion that the defendants' actions were proper is further bolstered by our recent holding in *Jenkins*, 147 F.3d at 585, wherein we stated as follows:

"[w]hen an officer has 'received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth,' he has probable cause" to arrest the accused perpetrator. *Gramenos v. Jewel Co.*, 797 F.2d 432, 439 (7th Cir.1986) (quoting *Daniels v. United States*, 393 F.2d 359, 361 (D.C.Cir.1968)) (other citations omitted). Thus, when a supermarket security guard witnesses an individual shoplifting, and the police arrest the individual based on the guard's report, qualified immunity shields the arresting officers from § 1983 liability. *See Gramenos*, 797 F.2d at 439.... So long as a reasonably credible witness ... informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will

be cloaked with qualified immunity [even] if the arrestee is later found innocent. *See [Tangwall*, 135 F.3d at 520].

In the case *sub judice*, the officers relied on information from a Jefferson County Court Commissioner who ordered them to arrest Wollin if he failed to voluntarily turn over his weapons. When Wollin blatantly disregarded the court order, the deputies arrested him just as they had been instructed to do. If law enforcement officials enjoy qualified immunity whenever they reasonably rely upon information provided by ordinary citizens, or public servants such as emergency medical personnel, *see Sheik–Abdi*, 37 F.3d at 1247, or security guards, *see Tangwall*, 135 F.3d at 520, it would be odd to now hold that an officer relying on reasonable instructions from a County Court Commissioner is somehow entitled to less protection from civil liability.

Looking at the facts, not as an omniscient observer would perceive them but as they would have appeared to a reasonable person in the position of the arresting officers, *see Sheik–Abdi*, 37 F.3d at 1246, we are convinced that Deputies Gondert and Seidel "could have reasonably believed that probable cause existed in light of well-established law." As the Supreme Court announced in *Malley*, 475 U.S. at 341, 106 S.Ct. 1092, "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... [If] officers of reasonable competence could disagree on this issue, immunity should be recognized." We reiterated this notion in *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988) wherein we proclaimed that

*Malley* ... created room for an immunity defense even in cases where there was no probable cause for the arrest, by holding that "if officers of reasonable competence could disagree" on whether there was probable cause, the defendant would be immune from damages liability. ... In other words, only if no reasonable officer could have mistakenly be-

lieved that he had probable cause to arrest is the immunity forfeited. (Citations omitted.)

We hold that under all the facts and circumstances present at the time of Wollin's arrest, the officers could have reasonably believed that probable cause existed to arrest Wollin. Thus, the deputies are protected from civil liability by qualified immunity.

## CONCLUSION

We conclude that the entry of summary judgment in favor of the deputies on Wollin's § 1983 claim was proper. Even if the arrest had not been supported by probable cause, the deputies are shielded from § 1983 liability under the doctrine of qualified immunity because when they arrested Wollin for contempt of court they were duly appointed law enforcement officials acting in their official capacity as deputy sheriffs for Jefferson County, Wisconsin. The district court's grant of summary judgment to the officers is, therefore,

AFFIRMED.

APPENDIX

DOC 30
RECIPHTLED
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN** 5 2 29 ril '93

JW P
CLEAR U. TT
W3 C .T

GERALD R. WOLLIN,

Plaintiff

v. Case No.: 97 C 568 S

DEPUTY SHERIFF BRUCE GONDERT,
DEPUTY SHERIFF JOSEPH SEIDEL,
in their individual capacities, and
the COUNTY OF JEFFERSON,

Defendants.

---

*AFFIDAVIT OF SERGEANT PAUL WALLACE*
*IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

---

STATE OF WISCONSIN}
 } S.S.
JEFFERSON COUNTY }

PAUL WALLACE, being first duly sworn on oath, deposes and states as follows:

1. I am a sergeant with the Jefferson County Sheriff's Department. I held the same position with the Sheriff's Department in November 1995.

2. As part of my duties as a sergeant, I personally participated in an incident involving Mr. Gerald R. Wollin on November 28, 1995. Attached as *Exhibit A* is a correct copy of the Offense Report I prepared on or about November 28, 1995 regarding the incident

J.\TML\WP91\WCM\CUEFERSON.CTY\WOLIN\AF7818.PW

628

involving Mr. Wollin. It is my regular practice in the course of my duties as sergeant to make and keep reports of this nature. I authored the report attached as Exhibit A, have personal knowledge of the events set forth in the report, and I know the contents of the report to be true.

3. During my conversation with Commissioner Onheiber on November 29, 1995, the Commissioner advised me that Mr. Wollin had made threats against the safety of his wife, and expressed concern that Mr. Wollin comply with the Order to surrender his weapons to the Sheriff's Department. I specifically asked Commissioner Onheiber whether Mr. Wollin could be taken into custody if he failed to comply with the Commissioner's Order. Commissioner Onheiber advised me that intentional violation of a Court Order could result in an arrest and a criminal charge for contempt. I conveyed this information to the deputies I assigned to report to the Wollin residence.

4. Attached as *Exhibit B* is a copy of the Booking Information List kept by the Sheriff's Department in the ordinary course of its operations. As reflected on the Booking Information List, Mr. Wollin was booked at the Sheriff's Department on November 28, 1995 for violation of a Court Order and resisting arrest.

5. I also responded to a call to the Wollin home on November 23, 1995. On that date, Mr. Wollin summoned the Sheriff's Department to the home requesting that his wife, Bonnie Wollin, be removed from the residence. During the course of that incident, Mrs. Wollin showed Deputy Sheriff Podratz and me numerous firearms which Mr. Wollin kept

J:\TML\WP61\WC\MC\JEFERSON.CTY\WOLIN\AF7818.PW

in the residence. Because of Mr. Wollin's agitated state on November 23, 1995, Deputy Podratz and I discussed removing the firearms from the residence so as to eliminate instruments of physical violence. During the course of this discussion, Mr. Wollin indicated that we might as well then remove all the knives from the home as well. Ultimately, Ms. Wollin agreed to voluntarily vacate the residence, and the weapons therefore were not removed from the residence.

Paul Wallace

Subscribed and sworn to before me this 13 day of January, 1998.

Notary Public, State of Wisconsin
My Commission is 10/28/98

*ORIGINAL*

## JEFFERSON COUNTY SHERIFF'S DEPARTMENT
### SUPPLEMENTAL REPORT

Reporting Officer: Wallace, Sgt. Paul Case #: 95-23515
Offense: Obstruct/Resist Report Date: 11/28/95
Activity: Contact w/Court Commissioner Michael Onheiber
Subject: Gerald R. Wollin
Location:

NARRATIVE: Approximately 16:52 hours, I received a call from Court Commissioner Michael Onheiber in regards to the suspect, Gerald R. Wollin. He advised me that Mr. Wollin was in court earlier on this date and that he had issued an order toward Mr. Wollin requiring him to turn in all of his weapons to the sheriff's department by 6:00 p.m. on this date.

He further advised me that this was in regards to a marital property problem that he had, feeling that the weapons would either disappear or possibly be used to harm the other individual involved in the pending divorce.

He further advised me that it was his opinion that Mr. Wollin was not going to comply with this order and he therefore requested that we send an officer to the residence to attempt to obtain the weapons from Mr. Wollin. He did indicate to me that he was not a judge, which led me to believe that the scope of this was simply a request for the weapons and no further search for the weapons if the subject refused, however there would be a violation of the court order which could result in an arrest.

I advised the court commissioner that we would attempt to have officers at the residence at or shortly after 6:00 p.m.

At this time Deputy Gondert was in the office. I did meet with him and I did advise him of the situation and I instructed him as follows. To make contact at the residence with Mr. Wollin; if he was invited into the residence he was to request Mr. Wollin to turn over the weapons to him per the court order. He was advised that if Mr. Wollin refused, he was to make him aware that this was a violation of the court order and criminal charges would be filed against him. I then advised him should that occur, he was to exit the residence and that would be the end of the complaint.

Deputy Gondert was also advised by me that should the subject exit his residence, that he was to be taken into custody.

Deputy Gondert indicated that he understood these instructions and was to meet Deputy Seidel in the area of the suspect's residence. The two units did check out at the residence and I did receive a radio transmission from Deputy Gondert indicating that Mr. Wollin had invited them into the residence, but that he was refusing to comply with the court order. At that time I reiterated to Deputy Gondert the consequences of that action. He advised me that Mr. Wollin understood those consequences.

Approximately one minute later I did hear another radio transmission from Deputy Gondert requesting that the airways be cleared unless 10-33. There was approximately two minutes of silence followed by another radio transmission from Deputy Gondert that indicated that the subject, Gerald

4

*EXHIBIT A*

Wollin, was in custody, that there had been a struggle and that the subject had to be sprayed with Capstan.

I then had a radio conversation with the officer on scene and I advised them that since an arrest had been made that they could then search the lunge of the arrest for any weapons that might be found there.

Approximately four minutes later, I received a phone call from Deputy Gondert who was inside the residence. It was at this time that I learned that Mr. Wollin had indeed been arrested outside of the residence. At this time I was advised by Deputy Gondert that they had located three (3) of the weapons in question. I advised him that those three weapons were to be brought to the sheriff's department, however the rest of the weapons in the residence were to be left and that they were to secure the residence, making sure that all appliances were turned off and that the animal in the residence was adequately cared for.

The subject was then transported to Fort E.R. Due to the struggle that had taken place he did sustain a minor abrasion to the forehead area and I wanted him checked for any possible internal injuries resulting from that. Upon being released from the hospital, the subject was brought to the Jefferson County Jail where he was booked in on a charge of one count of OBSTRUCTING and a second count of RESISTING ARREST.

In speaking with the jail, it is my request that the subject be held for a 1:00 appearance tomorrow based on the information I received from the court commissioner in regards to threats made against the safety of his wife.

It is further my request that the district attorney in the bail hearing request that the subject turn all weapons over to the sheriff's department as per the court order.

Upon completion of this I did recontact Court Commissioner Onheiber at his residence. I did relay to him the events that had taken place and further advised him that we had recovered three (3) weapons, however we stopped short of recovering all of them due to the circumstances stated earlier. He was then in complete agreement with the procedures in the handling of this complaint and he will assist in the investigation if any is required.

I also asked him to provide us first thing tomorrow morning with a copy of the order that he issued for this file.

SGT. PAUL WALLACE REPORTING (t-11/29/95 pf)

DETECTIVE DIV. REVIEW _____ PD
DATE: _____ 11-29-95

PATROL REVIEW/FILING _____ .
DATE: _____ .. ..

5

*EXHIBIT A*

cem File Branch Inquire Print
 PHOTO: 27342
┌─────── BOOKING INFORMATION LIST: WOLLIN, GERALD R ───────┐
 ┌─────── JAIL ACTIVITIES FOR: WOLLIN, GERALD R ───────┐
 ┌───── JAIL LOG ACTIVITIES DETAIL: WOLLIN, GERALD R ─────┐
 Activity Type: BOOKING
 Activity Status: DONE
 Release Reason:
 Jail Offense:
 Schedule for: 11/28/1995 at 20:23
 Actually Occured At: 11/28/1995 at 20:23
 Duration: 0.00 hours
 Responsible Officer: 385 PARKER, JEFFREY A
 Housing Assignment: JAIL - POD - - BKG
 Court:
 Judge:
 ┌───────────── Remarks ─────────────┐
 │BOOKED IN FOR VIOL. OF COURT ORDER & RESISTING. SUBJ WAS TA-│
 │KEN TO FAMH FOR TREATMENT TO ABRASIONS TO FOREARM & FOREHEAD│
 │ALSO FOR BEING O.C. @ TIME OF ARREST. WAS GIVEN BACITRACIN │
 └───────────────────────────────────┘
└──── [Add Another] [Continue] [Previous] [Exit] [Quit] ────┘
F1-Help F2-Choices F3-Del F4-Cont F6-Prev F7-Exit F9-Add F10-Menu ESC-Quit

System File Branch Inquire Print
 PHOTO: 27342
┌─────── BOOKING INFORMATION LIST: WOLLIN, GERALD R ───────┐
 ┌─────── JAIL ACTIVITIES FOR: WOLLIN, GERALD R ───────┐
 ┌───── JAIL ACTIVITY NOTES: WOLLIN, GERALD R ─────┐
 BOOKED IN FOR VIOL. OF COURT ORDER & RESISTING. SUBJ WAS TA-
 KEN TO FAMH FOR TREATMENT TO ABRASIONS TO FOREARM & FOREHEAD
 ALSO FOR BEING O.C. @ TIME OF ARREST. WAS GIVEN BACITRACIN
 for cuts apply as neccessary. per sgt wallace he is to be
 held w/o bond as he is a threat to others. will go to
 intake tommorow. no other problems noted.
 11-29-95 @2200. PER DA LARSON. THERE WILL ONLY BE 2·
 CHARGES: 1-OBSTRUCT. 1-RESIST. THE TOTAL BOND FOR THESE 2
 CHARGES WILL BE $600.00. HOWEVER. WE AREN'T TO INFORM OF
 THESE NEW FACTS UNTIL AFTER MIDNIGHT BECAUSE THEY ARE
 GETTING GUNS OUT OF SUBJ'S HOUSE. IF HE DOESN'T POST. HE
 WILL GO TO INTAKE.

F1-Help SF3-Del Line F4-Cont F6-Prev F7-Exit SF9-Add Line F10-Menu ESC-Quit

*EXHIBIT B*