**Louis WELLS, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, Thomas Kwasinski, Ignatius Kumiega, Helen Zemek, and Daniel Sterling, Defendants–Appellees.**

No. 99–3950.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 2000.

Decided Jan. 4, 2001.

Before BAUER, POSNER, KANNE, Circuit Judges.

## ORDER

Evanston police officer Louis Wells was pulled over by Chicago police officers who believed his car was similar to one seen leaving a drive-by shooting. Wells was then arrested for driving under the influence of alcohol ("DUT"). After Wells was acquitted of the DUI charge, he sued the City of Chicago and several of its police officers. He asserted false arrest claims against Officers Thomas Kwasinski and Ignatius Kumiega for stopping his car and arresting him without probable cause. He alleged a conspiracy to cover up the false arrest against Kwasinski, Kumiega and Helen Zemek, the officer who completed the arrest paperwork at the police station. He also alleged an unreasonable seizure by Lieutenant Daniel Sterling for refusing to allow him to use the washroom, and an excessive force claim against Kumiega for tightening his handcuffs. Finally, Wells brought a malicious-prosecution claim against the City of Chicago and an Illinois statutory claim that he later voluntarily dismissed.

The defendants moved for summary judgment on the false-arrest, conspiracy, malicious-prosecution, and unreasonable-seizure claims, but not the excessive-force claim. Judge Gottschall, concluding, *inter alia*, that the undisputed facts established as a matter of law that the officers had probable cause to arrest Wells for DUI, granted summary judgment to Kwasinski, Kumiega, Zemek, and the City as to Wells's false-arrest, conspiracy, and malicious-prosecution claims, and denied the motion as to his unreasonable-seizure claim. Wells's surviving claims of unreasonable seizure and excessive force against Sterling and Kumiega, respectively, went to trial before Judge Kennelly, and a jury found for the defendants. Wells then filed a Rule 59 motion requesting reconsideration of Judge Gottschall's summary judgment ruling on the issue of probable cause, which the district court denied. Wells now appeals, arguing that summary judgment was improper because there were genuine issues of material fact as to whether Kwasinski and Kumiega had probable cause to arrest him. Wells does not argue that the officers improperly stopped him initially, only that they lacked probable cause to arrest him for DUI. Wells also does not

challenge the jury verdict on his unreasonable seizure and excessive force claims.

At approximately 8:45 p.m. on March 13, 1996, Chicago police officers William Clancy and Norma Guerrero received a call over their police radio regarding shots fired in the vicinity of the intersection of Pratt and Ashland. At the time, Clancy and Guerrero were standing outside of a restaurant on Devon about one mile from the shooting scene. As they were getting into their car, a Camaro heading southbound at a high rate of speed turned east onto Devon, almost hitting Clancy. Clancy put out a flash message on the police radio that a newer black Camaro had just sped by. Instead of following the Camaro, the officers went to the crime scene where a man flagged down their car and told them he had observed a black IROC or Camaro speeding away from the area after the shooting. Clancy then put out a second flash radio message that a black, shiny Camaro was spotted in the area where the shots were fired.

During this time, Officers Kwasinski and Kumiega were sitting in their unmarked police car at the corner of Bryn Mawr and Winthrop. They heard Clancy's flash messages and shortly thereafter (at approximately 9:05 p.m.) saw a car fitting that description speed by. They turned on their car's emergency lights, radioed other officers that they had identified a vehicle matching the description in the flash messages, and pursued the Camaro southbound on Winthrop. In response to the police lights, Wells stopped his car. The parties disagree about the precise sequence of events leading up to Wells's arrest, but the essential facts are undisputed.

Kwasinski and Kumiega exited their car and approached Wells, one officer on each side of the Camaro. Kwasinski informed Wells that his car matched the description of one believed to be involved in a drive-by shooting. Wells told the officers that he was an Evanston police officer and gave them his police identification badge. Kwasinski asked Wells to step out of the car, and when he did, the officers removed Wells's handgun from his waistband. During this time, Officer Clancy and Sergeant Christopher Ferraro arrived at the scene; Clancy confirmed that Wells's car looked like the one he observed speeding by on Devon.

When Kwasinski first approached the car, he smelled alcohol on Wells's breath. He also noticed that once out of his car Wells was having trouble keeping his balance, was slurring his speech, was spitting, and was having difficulty understanding why he had been stopped. Similarly, Kumiega first smelled alcohol when he was one or two feet away from Wells. Kumiega noticed that Wells had blood-shot eyes, that his speech was slurred and that his behavior was abusive. And Sergeant Ferraro observed Wells to be glassy-eyed and very belligerent. Additionally, Kwasinski observed in Wells's car six bottles of Ice House beer, three of which were empty, and an open, half-empty bottle of Cuervo tequila. Wells was placed under arrest.

During discovery Wells admitted consuming two or three beers at a bar called Everybody's Place to Drink. Wells, however, denied that he was intoxicated at the time he was stopped. In his deposition Wells also denied that he smelled of alcohol when the officers pulled him over, but he had previously conceded at his suspension hearing that there probably was a "lingering odor of alcohol" on his breath. He also admitted in his deposition that his eyes were usually bloodshot.

 The district court granted summary judgment for the officers on Wells's unlawful-arrest, conspiracy and malicious-

prosecution claims because it concluded that they had probable cause to arrest him. This court reviews a grant of summary judgment de novo, drawing all reasonable inferences from the record in the light most favorable to the nonmovant. *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (determinations of probable cause should be reviewed de novo on appeal, but "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers"); *Kelley v. Myler,* 149 F.3d 641, 645 (7th Cir.1998). The existence of probable cause is an "absolute bar" to a section 1983 action for unlawful arrest. *Potts v. City of Lafayette, Ind.,* 121 F.3d 1106, 1113 (7th Cir.1997); *Fernandez v. Perez,* 937 F.2d 368, 370 (7th Cir.1991). While the existence of probable cause is often a jury question, summary judgment is appropriate "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Lanigan v. Village of East Hazel Crest,* 110 F.3d 467, 473 (7th Cir.1997) (citing *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1246 (7th Cir.1994)). "Courts evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Wollin v. Gondert,* 192 F.3d 616, 623 (7th Cir.1999) (internal citation and quotations omitted). Probable cause is an objective test, based upon "factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Id.* (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). This "flexible, commonsense approach" does not require that

the officer's belief be correct or even more likely true than false, so long as it is reasonable. *Id.* (citing *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). It is well established that the totality of the circumstances establishes reasonableness or lack thereof. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Rucker,* 138 F.3d 697, 700 (7th Cir.1998).

■ We agree with the district court that the undisputed facts show that Kwasinski and Kumiega had probable cause to believe Wells had been operating his vehicle while intoxicated. Officers Kumiega, Kwasinski, and Ferraro each testified in their depositions that Wells exhibited symptoms of intoxication: he smelled like alcohol, his eyes were red, his speech was slurred, he had trouble balancing, and he was being combative and uncooperative. The totality of the circumstances at the time Wells was arrested necessarily would have led reasonable officers to believe that he was driving while under the influence of alcohol.

Wells attempted to counter this evidence by presenting depositions from friends with him at the bar who testified that he did not look intoxicated when he departed almost forty-five minutes before Kwasinski and Kumiega stopped his car. Wells argues that, because he did not appear intoxicated to his friends, he could not have appeared intoxicated to the officers who pulled him over almost an hour later. According to Wells, the officers could not have reasonably believed he was intoxicated and so they lacked probable cause to arrest him. But as the district court concluded, Wells's own testimony and denials were insufficient to create a genuine issue of material fact. For example, although Wells notes that he never admitted having consumed on the day of his arrest any of

the alcoholic beverages found in his car, the record is also devoid of an affirmative denial that he had not been drinking in the car that day. Wells admitted that his eyes were usually bloodshot and that he kept asking questions of the officers even after he had been told to be quiet. And, as noted above, Wells did acknowledge at his suspension hearing that there was probably a lingering odor of alcohol on his breath. In any event, that Wells may or may not have been intoxicated, or that he may have been more or less so an hour before the officers saw him, is not relevant to this inquiry. Indeed, probable cause to arrest for intoxication has been found even where it was later proven that the arrestee had not consumed any alcohol. *See, e.g., Qian v. Kautz,* 168 F.3d 949, 954 (7th Cir.1999) (officer had probable cause to believe that plaintiff had been operating car while intoxicated because he was slumped over his steering wheel and having difficulty walking; later determined that plaintiff had subdural hematoma); *Hirsch v. Burke,* 40 F.3d 900, 903 (7th Cir.1994) (officer observed plaintiff had trouble balancing himself, smelled of alcohol, appeared incoherent and had bloodshot eyes; plaintiff actually suffering from insulin shock).

The district court held that Wells's evidence was insufficient to create a genuine factual dispute as to whether the officers perceived Wells to be intoxicated at 9:00 p.m., particularly in light of the fact that his friends had last seen him over forty-five minutes earlier and several open and empty containers of alcohol were found in Wells's car when he was pulled over. Here, the undisputed evidence of Wells's speeding, physical appearance and combat-

ive demeanor, and the presence of a half-empty bottle of Tequila and a half-finished six pack of beer in his car would have been sufficient to establish probable cause to arrest him on a DUI charge.

AFFIRMED